### In re AMERICAN TOY WORKS, Inc.
Bankr. No. 47494.

United States District Court
E. D. New York.

June 20, 1950.

The following is the opinion of Castellano, Referee:

The Collector of Internal Revenue has filed a second supplemental priority claim in the sum of $26,097.66. The trustee in bankruptcy has filed objections and asks that this claim be disallowed. The objections are as follows:

1. The bankrupt is not justly and truly indebted to said claimant in any sum whatsoever for either income tax or excess profits tax for the year ending June 30th, 1945.

2. The Collector of Internal Revenue could not and should not have made any additional assessment for the year ending June 30th, 1945 for the reason that on the 10th day of August, 1948, when such assessment was levied, the Statute of Limitations had already run against the Collector of Internal Revenue for the said year.

3. That the disallowance by the Collector of Internal Revenue of commissions in the sum $22,122.17 paid by the bankrupt in the year 1945 was improper and such deductions for commissions should have been allowed.

4. That the "excessive deduction disallowed" for the year ending June 30th, 1946 in the sum of $27,850.90 should not have been disallowed and that such deduction was proper.

5. That the additional assessment for taxes and excess profits taxes filed herein by the Collector of Internal Revenue on August 10th, 1948 is not legally, morally nor factually justified under the circumstances existing on the filing of the involuntary petition herein in February, 1948.

Upon the hearing, objection number 2, based upon the Statute of Limitations was withdrawn by the trustee. The objections were heard and proof taken on September 26, 1949 and November 7, 1949. Julius Berkowitz an Internal Revenue Agent, and Morton Held a certified public accountant formerly employed by the bankrupt were called as witnesses on behalf of the trustee.

The claim asserted by the Collector of Internal Revenue is one based upon income taxes alleged to be due from the bankrupt and is made up of two items, one for $11,858.50 the amount of additional taxes due for the fiscal year ending June 30, 1945, and the second is an item of $14,239.16 the amount claimed to be due as additional excess profits tax for the fiscal year ending June 30, 1945, making a total sum of $26,097.66.

It appears from the record and I find that the bankrupt herein filed a Return for the fiscal year ending June 30, 1945, and also a Return for the fiscal year ending June 30, 1946. The 1945 Return showed a net taxable income $52,350.14. The Return for 1946 showed an operating loss of $50,740.72. The Commissioner of Internal Revenue disallowed the sum of $22,122.17 (s.m.22), representing certain payments made by the bankrupt during the fiscal year 1945; and he disallowed the sum of $27,850.90 (s.m.26), for certain payments made by the bankrupt during the fiscal year ending June 30, 1946, as commissions upon sales of bankrupt's products. By reason of carry-back provisions of the Internal Revenue Code, the taxpayer carried back for the fiscal year 1946 a loss against a profit shown on its Return for the previous year 1945.

The Government in support of the claim urges that the payments disallowed were made by the bankrupt for the two years in question in the amounts described for the purpose of avoiding the payment of a tax by the corporate taxpayer, that the payments were made by the taxpayer to persons who had an interest in the bankrupt corporation who had not performed any services to justify the payments, and that the payments did not reflect a return on invested capital.

The adjusted taxable income upon which this claim is based was the sum of $45,475.70 (s.m.8). for the fiscal year 1945. If the payments disallowed by the Commissioner were justified, the claim must be allowed for the amount filed.

I find that the bankrupt corporation commenced business June 30, 1944 when it purchased the assets of American Toy Works

(not incorporated) and at that time, and for the fiscal year 1945 the officers of the corporation, the stock ownership held and salaries paid for this year were as follows:

| Name | Stock Held | Office | Salary |
| --- | --- | --- | --- |
| Oscar Geller | 62½% | President | $12,000 |
| Adolph O. Wien | none | Vice-President | 7,500 |
| David Mendozza | 25% | Treasurer | 3,000 |
| Samuel Held | 12½% | Secretary | none |

The record shows and I find that Oscar Geller devoted his full time to his duties as President of the bankrupt and he rendered no services to Toy Sales Co. in connection with sales of bankrupt's products at any time.

Adolph O. Wien who formerly traded under the name of American Toy Works held no stock of the bankrupt and no deductions were made by the Commissioner as to any payment made by the bankrupt to him.

I find that David Mendozza while receiving a salary of $3,000 from the bankrupt for the year 1945 was engaged in the insurance business in New York and he devoted practically all of his time to that business at all times. Samuel Held secretary of the bankrupt received no salary as an officer and during the two years in question was employed as an Internal Revenue agent in the Treasury Department. They rendered no services to Toy Sales Co. in connection with the sale of bankrupt's products during fiscal years involved.

The issue here arises by reason of payments made by bankrupt during the two years as commissions to the general partners of Toy Sales Company which was formed on January 1, 1945 by Oscar Geller, David Mendozza and Samuel Held three officers of the bankrupt with Charles Kesselman, Leo Strauss and Murray Richstone for the purpose of using the partnership as an exclusive sales agency for the bankrupt's products. The three officers were General partners and the remaining three members were limited partners (Exhibit 2).

Changes occurred in the corporation and in the partnership during the fiscal year ending June 30, 1946, when Jerome Zinman succeeded Oscar Geller and Alvin R. Mendozza succeeded David Mendozza. Both became officers of the corporation and general partners in Toy Sales Company.

I find that the officers of the corporation and general partners of Toy Sales Company during the fiscal year ending June 30, 1946, Samuel Held, Jerome Zinman and Alvin R. Mendozza rendered no services to Toy Sales Company in connection with the sale of the bankrupt's products.

I find that for the fiscal year 1945 the Commissioner disallowed payments of $22,112.17 to Toy Sales Company for commissions paid by the bankrupt to the general partners Oscar Geller, David Mendozza and Samuel Held; and for the fiscal year 1946 the Commissioner disallowed payments of $27,850.90 to Toy Sales Company for commissions paid by the bankrupt to the general partners Samuel Held, Jerome Zinman and Alvin R. Mendozza.

The Commissioner did not question any of the payments made by the bankrupt to the three limited partners as they did the actual selling of the products of the bankrupt through Toy Sales Company.

Counsel for the trustee in written argument well prepared, contends that Toy Sales Company was a separate and distinct organization from the bankrupt with separate bank account, separate offices, separate employees, and filed the usual partnership Income Tax Returns. He contends that the question of performing services has nothing to do with the issue. That a person has the right to conduct business as he sees fit, and he is free to choose between corporate, partnership and individual methods of conducting business, and thereby be subject only to the appropriate tax burden applicable under the statute. He argues that the action of the Commissioner under Section 45 of the Internal Revenue Code, 26 U.S.C.A. § 45, in disallowing the items for commissions paid by the bank-

rupt to the sales agency for the benefit of the three general partners was unwarranted, arbitrary and unlawful.

Counsel for the Government takes the position that in computing net income of the bankrupt corporation, the Commissioner under the provisions of the Internal Revenue Code was justified in disallowing the payments involved made to the three officers of the bankrupt through Toy Sales Company, because they rendered no services for the amount paid them as commissions on sales of the bankrupt's products. In addition the amounts disallowed were not paid for services actually rendered, and they were not necessary operating expenses. The payments were solely a means of reducing the net income of the bankrupt and a means of avoiding the lawful tax due on the corporate profits.

Net income must be determined under the applicable provisions of the Internal Revenue Code. In the case at bar it is immaterial whether the Commissioner proceeded under Section 23(a) (1) (A) relating to deductions allowed for trade or business expense, or Section 45 of the Code relating to powers authorizing the Commissioner in certain cases to allocate income or deductions of organizations controlled by the same interests. The Commissioner in arriving at the net income of the bankrupt upon which the claim involved is based has not exceeded his authority under the statute. There is ample evidence in the record to sustain his action in disallowing the payments and making assessment of the tax due. The Commissioner here makes no attempt to rest upon the presumption in law that his determination is correct. His able counsel has gone further and established the facts upon which the determination is based. The taxpayer (the trustee here), has failed to carry his burden under the law, of proving that the Commissioner's assessment was erroneous.

Accordingly, the objections filed by the trustee are overruled, and the claim for priority filed by the Collector of Internal Revenue in the sum of $26,097.66 is allowed for the full amount.

Settle order on notice.

Underhill & Rubinger, New York City, (Hyman Frank, New York City, of counsel), for Trustee.

J. Vincent Keogh, U. S. Atty., Brooklyn, N. Y. (Nathan Borock, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for Collector of Internal Revenue.

BYERS, District Judge.

An examination of the testimony yields agreement with the views of the Referee which are understood to come down to this: That the so-called general partners did practically nothing to earn the salaries seemingly paid to them on behalf of the selling agency; that the special partners, so-called, were the real salesmen, and that the action of the Collector in allowing deductions only as to them was enlightened.

The Referee's determination is affirmed. Settle order.